WILLIAMS, J.
 

 |TThe petitioners, Cynthia Peironnet, Elizabeth Franklin, Eleanor de St. Mar-ceaux and Pamela Comegys, appeal a judgment in favor of the Red River Waterway Commission (“the Commission”). The district court sustained the Commission’s exception of res judicata, finding that the petitioners’ claims were barred by the pri- or settlement of the Commission’s 1993 expropriation action. For the following reasons, we affirm.
 

 FACTS
 

 The succession of Elizabeth Fry, who died in March 1991, was opened in May 1991. In September 1993, the Commission filed a petition for expropriation against the Succession of Fry (“the succession”), Rex Young and Sandra Young, seeking to expropriate 440.7 acres of land owned by the succession and subject to a lease held by the Youngs. On September 10,1993, in accordance with the district court’s expropriation order, the Commission deposited $123,882 into the registry of the court, full ownership of the 440.7 acres was expropriated and taken as of the time of such deposit, and the succession was ordered to vacate the property. In September 1993, the succession filed an answer denying the necessity of the taking, and alternatively alleging that the amount of compensation was not sufficient. The succession did not file a motion to dismiss the expropriation petition to contest the validity of the taking.
 

 In January 1994, the Commission and the executor of the succession, Commercial National Bank (“the bank”), agreed to settle the 1993 expropriation lawsuit and a prior expropriation action filed against Elizabeth Fry in 1990 involving another tract of land, which is not at issue | Jn this appeal. The parties agreed to execute reciprocal releases to resolve both lawsuits and the Commission agreed to pay the Fry Succession the amounts of $249,041.10 previously deposited into the court registry in connection with the 1990 petition, $123,882 deposited for the 1993 expropriation petition, and an additional $35,000 toward the 1990 action.
 

 In March 1994, the district court rendered judgment authorizing the bank to compromise all claims existing between the
 
 *404
 
 succession and the Commission, as set forth in the 1998 lawsuit with docket # 392,702. On March 14, 1994, the bank, as executor of the succession, signed the settlement agreement and release of claims as to the 1993 expropriation of 440.7 acres of land in return for the amount of $123,882. In June 1994, the .Commission signed the settlement agreement regarding the 1993 expropriation and signed a joint motion authorizing the succession to withdraw the $123,882 from the court registry. For some reason, the settlement agreements were not filed in the record of lawsuit #392,702. However, in conformance with the settlement agreement, the August 1994 judgment of possession excluded the expropriated 440.7 acre tract from the succession property transferred to Fry’s surviving children.
 

 In 2000, in response to public requests, the Commission began to build a boat ramp on a 2-acre tract of land that was part of the property acquired through the 1993 expropriation. The tract was identified as the “Bishop Point Recreation Area.”
 

 In February 2004, Cynthia Peironnet, Elizabeth Franklin, Eleanor de St. Mar-ceaux and Pamela Comegys, the heirs of Elizabeth Fry, filed a | ^petition seeking the return of the 440.7 acres expropriated in 1993, alleging that the property should not have been taken in fee title and that the Commission was improperly using the land for recreational purposes. The heirs’ lawsuit and the 1993 expropriation lawsuit .were consolidated for trial and the heirs filed a reconventional demand in the lawsuit # 392,702. The Commission filed an exception of res judicata, on the basis that the heirs’ lawsuit was barred by the succession’s execution of the settlement agreement releasing the Commission from all future claims and causes of action with respect to the expropriation of the 440.7 acre tract of land. The Commission also filed an exception of no cause of action or peremption.
 

 After a hearing on the exceptions, the district court issued oral reasons for judgment, finding that the succession had previously released the Commission from all future claims or causes of action arising from the 1993 expropriation with the intent to terminate the litigation. The court rendered judgment sustaining the Commission’s exception of res judicata, and denying the exceptions of no cause of action and peremption. The heirs appeal the judgment.
 

 DISCUSSION
 

 The heirs contend the district court erred in sustaining the Commissions’s exception of res judicata. The heirs argue that the compromise was ineffective and unenforceable because the Youngs did not sign the settlement agreement.
 

 Initially, we note that the Civil Code articles regarding compromise were amended in Acts 2007, No. 138, effective August 15, 2007. However, |4since the Commission’s expropriation action and the heirs’ petition were filed prior to the amendment date, the pre-revision language will apply in this case. A compromise is an agreement between parties who adjust their differences by mutual consent for the benefit of terminating a lawsuit. The compromise must be reduced to writing or recited in open court. LSA-C.C. art. 3071;
 
 Ortego v. State DOTD,
 
 96-1322 (La.2/25/97), 689 So.2d 1358.
 

 In the present case, the Commission and the executor of the succession each signed a written compromise agreement. Contrary to the heirs’ argument, there was no showing that any additional signatures were necessary for the execution of a valid compromise between the
 
 *405
 
 succession and the Commission. The district court’s order of expropriation directed Rex and Sandra Young to assert any claims they may have possessed regarding their lease. The record does not contain any such claims asserted by the Youngs, who did not even file an answer to the 1993 expropriation petition. Based on the evidence presented, the record supports a finding that the parties executed a valid compromise whereby the succession released all future claims and causes of action arising from the expropriation of the 440.7 acres in return for the compensation paid by the Commission. The heirs’ argument lacks merit.
 

 Mistake
 

 In several assignments of error, the heirs contend the district court erred in finding that the compromise precluded their subsequent lawsuit. The heirs assert that the compromise cannot be enforced due to the parties’ mutual mistake about the subject matter in dispute.
 

 IrA compromise has the legal efficacy of a judgment, possessing a force equal to the authority of things adjudged, and a compromise cannot be attacked on account of any error in law. LSA-C.C. art. 3078;
 
 Brown v. Drillers, Inc.,
 
 93-1019 (La.1/14/94), 630 So.2d 741. An error as to the subject matter in dispute is a ground to rescind a compromise. LSA-C.C. art. 3079;
 
 Brown, supra.
 

 In the present case, the compromise agreement provides that the Commission and the succession grant mutual releases and discharge the other from “any and all future claims, demands, compensation, rights, damages or causes of action whatsoever, concerning the expropriation of the 440.7 acre tract of land....” In his deposition, the succession’s attorney testified that his client understood that as a result of the settlement the Commission would have title ownership of the 440.7 acres.
 

 The evidence presented shows that the parties were not mistaken about the property at issue or the nature of the rights being released in the compromise instrument. The succession was aware that the Commission was acquiring ownership of the expropriated property in return for the compensation paid. Based upon this record, there was no showing of a mistake that would negate the compromise between the parties. Thus, the heirs’ argument lacks merit.
 

 Purpose of Expropriation
 

 In the alternative, the heirs argue that even if there was a valid compromise, the settlement did not extend to the claim of improper taking for recreational use. In their appellate brief, the heirs’ argument shifts back Rand forth from asserting that the Commission improperly expropriated the land for recreation to asserting that even though the land was taken for flooding, the Commission later improperly changed the use to recreation by building a boat ramp. Neither assertion is supported by the record.
 

 The purpose of the Red River Waterway District, under the authority of the Red River Waterway Commission, is to establish, operate and maintain a navigable waterway system in cooperation with the federal and state governments. LSA-R.S. 34:2302. The Commission is authorized to acquire by purchase, donation, lease or otherwise and to hold and use any property necessary or desirable for carrying out the purposes of the Commission. LSA-R.S. 34:2309(3). The Commission has authority to acquire by purchase or donation, but not by expropriation, and then convey to the United States any lands required by the Corps of Engineers for the construction of public recreation sites along the waterway. LSA-R.S. 34:2309(13).
 

 
 *406
 
 In the present case, Kenneth Guidry, the executive director of the Commission, testified by deposition that the Corps of Engineers asked the Commission to obtain permanent rights for the inundation of land resulting from the increased water level in Pool 5 after completion of Lock and Dam No. 5. Guidry stated that the Commission acquired title ownership of the 440.7 acres through expropriation for the purposes of lock and dam construction and inundation. He explained that a reason for acquiring ownership of the land for flooding, rather than a servitude, was to avoid potential conflicts that could occur when the increased water level allowed 17fishermen and hunters access to privately owned land. He testified that some time later, the Commission received several requests from the public for boat access to the west side of the Red River. According to Guidry, the Bishop Point area was chosen from several alternatives as the site for a boat ramp.
 

 Henry Bruser, general counsel for the Commission, testified that the Commission acquired ownership of the 440.7 acre tract following the Corps of Engineers’ request for inundation rights necessary for completion of the navigation project. Bruser stated that the Commission obtained ownership of the property because of the potential problem of needing to acquire multiple servitudes for different uses that arose over time, resulting in increased costs to the public. He further testified that recreation was an after-the-fact use incidental to the completion of the locks and dams, which created lakes or ponds accessible to the public for boating and fishing.
 

 The evidence presented demonstrates that the Commission expropriated the 440.7 acres in 1993 for the purpose of inundation related to the operation of Lock and Dam No. 5, as stated in the Commission’s petition and in the order of expropriation. The land expropriated was part of the Red River navigation system subject to inundation, and was not the land “required by the ... Corps of Engineers for the construction of public recreation sites” referenced in Section 2309(13).
 

 In addition, the record does not support the heirs’ assertion that the subsequent construction of a boat ramp was inconsistent with the Commission’s expropriation of the land for the purpose of inundation 18pursuant to Sections 2302 and 2309(3). The ramp is apparently located on that portion of the expropriated property described in the Commission’s petition as the area between 145 and 148 feet above sea level subject to occasional inundation. The expropriated land continues to be subject to inundation and any recreational use by the public is incidental to that primary purpose. Thus, the heirs’ argument that the Commission’s taking of the property was for an improper recreational purpose lacks merit.
 

 Intent
 

 The heirs contend the succession and the Commission never intended to compromise any issue concerning recreation at the time they executed the settlement agreement. The heirs assert that the Commission exceeded its authority.
 

 A compromise agreement extends only to those matters that the parties expressly intended to settle and does not extend to differences which the parties did not intend to include. LSA-C.C. art. 3073;
 
 Brown, supra; Hudson v. Progressive Security Insurance Co.,
 
 43,857 (La.App.2d Cir.12/10/08), 1 So.3d 627. In applying the rule of construction set forth in Article 3073, courts are guided by the general principle that the contract must be construed in light of attending events and circumstances. Thus, the intent expressed
 
 *407
 
 by the language of the compromise instrument, considering the circumstances existing at the time of the agreement, is controlling.
 
 Brawn, swpra; Hudson, supra.
 

 A valid compromise can form the basis for a plea of res judicata.
 
 Brown, supra.
 
 The compromise instrument is the law between the parties, 19must be interpreted according to the parties’ intent and is governed by the same general rules of construction applicable to contracts.
 
 Brown, supra.
 
 Public policy favors compromise agreements and the finality of settlements. A compromise that releases all claims is not ambiguous simply because it is broad.
 
 Hudson, supra.
 

 In the present case, the succession’s attorney, William Comegys, testified that the compromise agreement settled the 1993 expropriation lawsuit for the amount deposited in the court registry. Comegys stated that the intent of the succession was reflected in the compromise language, which provided that the parties discharged each other from any and all future claims, demands or causes of action whatsoever as to the expropriation of the 440.7 acre tract of land. Comegys testified that as a result of the compromise, the succession released any claims against the Commission’s title ownership of the expropriated land.
 

 The record shows that the language of the compromise agreement was not ambiguous and the succession’s attorney, who drafted the compromise, acknowledged that the language releasing the Commission from all future claims or causes of action concerning the 440.7 acre tract demonstrated the intent of the parties. The circumstances existing at the time of the compromise included the district court’s Order of Expropriation, which conveyed ownership of the land to the Commission and was recorded in the parish conveyance records in June 1994.
 

 Based upon the evidence presented, there was no showing that in signing the compromise, the succession intended anything other than to |insettle and dismiss all claims related to the validity of the expropriation. Consequently, we cannot say the district court erred in sustaining the exception of res judicata on the basis of the compromise agreement. The assignments of error lack merit.
 

 CONCLUSION
 

 For the forgoing reasons, the district court’s judgment is affirmed. Costs of this appeal are assessed to the appellants, Cynthia Peironnet, Elizabeth Franklin, Eleanor de St. Marceaux and Pamela Comegys.
 

 AFFIRMED.