MOORE, J.
The plaintiffs, Woody Bilyeu, Mary Bilyeu and Patrick Shelton, appeal a judgment that sustained an exception of res judicata filed by the three remaining defendants, DirecTECH Southwest, DirecTECH Inc. and Multiband Corp., thus ending the lawsuit, and a judgment that denied the plaintiffs' later motion for leave of court to file a fifth supplemental and amending petition. For the reasons expressed, we affirm.
FACTUAL BACKGROUND
The Bilyeus were the owners of Comm-Craft Inc. and DirecTECH Inc. ("DT"), companies that, in the early 1980s, installed satellite dishes (and later became part of DirecTV). Together with Shelton, they *470 were also the trustees of these companies' Employee Stock Ownership Plans ("ESOPs"). In July 2004, they sold their interest in Comm-Craft (which changed its name to DirecTECH Southwest, "DTSW") and DT (later known as DirecTECH Delaware, but still called "DT" in this matter). Before they divested, the plaintiffs sold their shares in these companies' ESOPs back to the ESOPs. The purchasers paid by executing promissory notes to the plaintiffs.
Later, DirecTECH Holding Co. ("DTHC") was formed to act as a holding company of DT and DTSW. In June 2005, DTHC acquired 100% of the stock of DT and DTSW; thus, DTSW and DT were wholly-owned subsidiaries of DTHC.
In 2007, in an effort to refinance, DTHC asked the plaintiffs to take refinance notes, and they agreed. DTHC executed two notes, the "Dec 2007 Refi Note," in favor of Bilyeu for $ 11,622,386, and the "Dec 2007 Bilyeu Bucks Note," in favor of Bilyeu Bucks (the Bilyeus' LLC) for $ 818,897. As part of the transaction, DTHC's subsidiaries, DTSW and DT, agreed to indemnify (by nine separate documents, the "Indemnity Agreements") the Bilyeus for any time, travel, legal or other expenses they might incur in connection with the ESOP transactions.
Later in 2007, the U.S. Department of Labor ("DOL") opened an ERISA investigation into whether the plaintiffs had a conflict of interest by acting as directors of the companies selling their stock and as trustees of the ESOPs buying it. DOL suspected, among other things, that the sales were at grossly overinflated prices, resulting in sizable losses to the employees invested in the ESOPs and in financial gain to the sellers.
PROCEDURAL HISTORY
In September 2008, Bilyeu Bucks and the Bilyeus individually filed this suit alleging that the Dec 2007 Refi Note and Dec 2007 Bilyeu Bucks Note were in default. They demanded the balances, a total of $ 12,123,478, plus interest and attorney fees as stated in the notes, from DTHC, DTSW, DT and some other subsidiaries. They also demanded enforcement of the Indemnity Agreements against DTSW and DT.
The defendants filed an exception of prematurity; after some litigation, the matter was referred to arbitration in Winn Parish.[1]
Meanwhile, several things happened. In late 2008, DTHC sold 100% of its shares of DT and DTSW to Multiband. In early 2009, in connection with the stock purchase, DTSW, DT and DTHC executed an assignment and assumption agreement ("Master Agreement") whereby Multiband, DTSW and DT would assume certain obligations of DTHC. The Master Agreement specifically listed the Indemnity Agreements as subject to the assignment and assumption and stated that Multiband and DTHC's operating entities "expressly assume all covenants * * * of DTHC * * * as if they were the original party thereto[.]"
In June 2011, the Bilyeus and Shelton settled their ERISA claim with DOL. They agreed to pay $ 5,181,818 to the DTHC ESOP and $ 518,181 directly to DOL.[2]
*471 They executed a consent judgment and order which contained a "Bar Order": the plaintiffs were permanently and forever barred from filing any claims against any nonsettling defendant, "whether for indemnification, contribution, reimbursement, or other monetary relief," where the claim was based on the facts in the DOL complaint.
In June 2012, the arbitrator denied the Bilyeus' claims against DTHC on the Dec 2007 Refi Note and Dec 2007 Bilyeu Bucks Note, but awarded Bilyeu Bucks $ 74,770 on the Indemnity Agreements. In October 2012, Bilyeu Bucks acknowledged receipt and satisfaction of this amount.
The Bilyeus filed four supplemental and amending petitions, adding Shelton as a plaintiff and joining several additional defendants, including Multiband. In 2013, the plaintiffs settled with most of these defendants.
In March 2016, the three remaining defendants, DTSW, DT and Multiband, filed the instant peremptory exception of res judicata. They alleged that the Bar Order prohibited the plaintiffs from suing any nonsettling defendant for indemnification arising out of the facts in the DOL complaint. They also alleged that under the Master Agreement, Multiband stepped into the shoes of DTSW and DT, and thus was entitled to the protection of the Bar Order.
The plaintiffs conceded that the Bar Order existed, but argued it was not a "blanket bar," and urged that the Master Agreement was not valid.
ACTION OF THE DISTRICT COURT
The exception of res judicata was tried in September 2016. After taking the matter under advisement, the district court issued reasons for judgment in February 2017. The court initially stated that Multiband acquired 100% of DTHC through a stock purchase agreement. It then found that the Bar Order barred this suit against DTSW and DT, and that the Master Agreement gave Multiband the benefit of the Bar Order. The court theorized that the Bar Order would permit the plaintiffs to sue "parties such as those who prepared the valuations upon which Plaintiffs relied when they sold their stock to the ESOPs," but not these defendants. The court rendered judgment granting the exception of res judicata and dismissing the suit in January 2018.
Four days later, the plaintiffs moved for leave of court to file a fifth supplemental and amending petition, to join another defendant, Multiband Field Services, allegedly a successor in interest to Multiband. The district court denied this motion, handwriting on the proposed order, "granting of the motion to amend would be futile as the granting of the motion for res judicata this day effectively dismisses this lawsuit."
The plaintiffs now appeal both the grant of the exception of res judicata and the denial of leave to amend. They designate nine original specifications of error; by reply memo, they assert seven supplemental specifications.
DISCUSSION
Factual Error of Trial Court
By their first original specification of error and second supplemental specification, the plaintiffs urge the district court was plainly wrong to find that Multiband acquired 100% of the stock of DTHC, when the evidence clearly showed that Multiband acquired 100% of the stock of DTSW and DT. The plaintiffs contend that *472 this factual error "right out of the gate" tainted the court's conclusion that Multiband stepped into the shoes of DTHC.
The defendants concede that the district court misspoke when it stated that Multiband acquired DTHC outright; in fact, Multiband acquired only DTHC's subsidiary companies. The defendants submit, however, the error is immaterial, as Multiband and its subsidiaries expressly assumed the Indemnity Agreements from DTHC, and the Indemnity Agreements are the linchpin of their exception of res judicata.
The first part of the plaintiffs' argument has merit: the district court committed manifest error in finding that Multiband acquired 100% of the stock of DTHC instead of 100% of the stock of DTSW and DT. However, for reasons more fully discussed below, this error did not taint or prejudice the remainder of the court's factual findings. The district court correctly found that DTHC assigned, and the DTHC operating companies and Multiband assumed, all of the Indemnity Agreements set forth in the Master Agreement. These specifications do not present reversible error.
Interpretation of the Agreements
By their second and third original specifications of error and fifth and sixth supplemental specifications, the plaintiffs urge the district court erred in failing to find that Multiband was an assuming obligor pursuant to the terms of the Indemnity Agreements and under the terms of the Master Agreements. The Indemnity Agreements require a company acquiring the indemnitor company, DT, to assume the Indemnity Agreements in writing; DT cannot sell all, or substantially all, its stock unless the purchaser "expressly assumes, in writing," DT's obligations and duties; hence, Multiband must have assumed DT's Indemnity Agreements. Further, § 1 of the Master Agreement states that Multiband "expressly assume[s] all the covenants, agreements, obligations and liabilities of DTHC * * * as if they were the original parties thereto," and § 3 provides, "Except for those obligations being expressly assumed by * * * Multiband, * * * no other obligations of DTHC, of any kind or nature, are being assumed by * * * Multiband."
By their fifth specification of error, the plaintiffs further urge that the court erred in finding that Multiband stepped into the shoes of DT by virtue of an assignment of all DTHC's rights, when no such assignment exists. The plaintiffs contend there is simply no such assignment of all of DTHC's rights in the Master Agreement, or in any other document.
Interpretation of a contract is a determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. Factual findings that pertain to the interpretation of a contract will not be disturbed absent manifest error. Campbell v. Melton , 2001-2578 (La. 5/14/02), 817 So.2d 69 ; U.L. Coleman Co. v. Gosslee , 51,396 (La. App. 2 Cir. 11/3/17), 244 So.3d 783, 2017 Wage & Hour Cas. (BNA) 395,518, writ denied , 2018-0239 (La. 4/16/18), 240 So.3d 180.
Six of the Indemnity Agreements (dated December 31, 2003, March 19, 2004, and August 28, 2004) provide as follows:
This Agreement shall be binding upon and inure to the benefit of the assigns, successors and legal representatives of the parties hereto. Directech hereby agrees that it shall not merge or consolidate with any other entity or corporation in a transaction after which Directech is *473 not the surviving entity nor shall it sell all or substantially all of its stock (other than to the trust) or its assets to another person, corporation, association, partnership or other entity unless that other person, corporation, association, partnership or other entity expressly assumes, in writing, the duties and obligations of Directech as set forth in this agreement.
The remaining three Indemnity Agreements (dated December 31, 2003, and March 19, 2004) provide, similarly:
This Agreement shall be binding upon the successors of the Company. In the event that the Company merges or consolidates with another entity, or is restructured in any form whatsoever, the Company or its successor shall reconfirm, acknowledge and bind itself to the duties and obligations of the Company as set forth in this Agreement.
In short, the Indemnity Agreements state that any successor or company buying the stock of DT and DTSW is bound to the Indemnity Agreements. Hence, when DTHC acquired 100% of the stock of DT and DTSW, in June 2005, DTHC became bound by the Indemnity Agreements.
The Master Agreement (dated January 2, 2009) provides, in pertinent part:
DTHC has agreed to assign the DTHC Obligations to the DTHC Operating Entities and to [Multiband], and the DTHC Operating Entities and [Multiband] have agreed to assume the DTHC Obligations, and certain other obligations of DTHC, pursuant to the terms of this Agreement and the Stock Purchase Agreement, respectively. * * *
[Multiband] and the DTHC Operating Entities will assume all liabilities and contingent liabilities outlined in this Agreement and any and all contingent liabilities outlined in the Stock Purchase Agreement, as well as DTHC's expenses and other identified liabilities incurred prior to the Closing * * *. For each of the DTHC Obligations, (a) DTHC assigns and the DTHC Operating Entities and [Multiband] expressly assume all covenants, agreements, obligations and liabilities of DTHC under the Applicable DTHC Obligations as if they were the original party thereto, including, without limitation, all indemnity, reimbursement and other payment obligations as set forth therein[.]
The Master Agreement further states that DTHC was a party to the Indemnity Agreements. This satisfies the requirement, in the Indemnity Agreements, that any purchaser must "expressly assume[ ], in writing," DT's obligations and duties. A plain reading of the Master Agreement shows that DTHC assigned, and DTHC's Operating Entities and Multiband assumed, various obligations, including the Indemnity Agreements. There is simply no merit to the assertion of the plaintiffs' second and third specifications of error that the district court failed to find that Multiband was an assuming obligor.
We agree that these documents make no mention of any assignment of DTHC's rights. Only obligations are assigned. However, the Master Agreement expressly states that these obligations are transferred to the assuming obligors "as if they were the original party thereto." Thus there is no merit to the assertion of the plaintiffs' fifth specification of error that the district court erred in finding that Multiband "stepped into the shoes" of DTHC and its subsidiaries. This comports with a plain reading of the contract. La. C.C. art. 2046. We perceive no manifest error.
These specifications of error lack merit.
*474 Assumption of Obligations
By their fourth specification of error, the plaintiffs urge the district court erred in holding that an assumption of an obligation by an assuming obligor releases the original obligors. In support, they cite La. C.C. art. 1821, which permits an obligor and a third party to agree to an assumption by the latter of an obligation of the former, but states that the obligee's consent to such an agreement "does not effect a release of the obligor." They further cite Revision Comment (d), which states that such an arrangement does not extinguish the original obligation, and Saúl Livinoff, Law of Obligations , 5 La. Civ. L. Tr., § 10.13 (2 ed., 2001), "the original obligor is not released, that is, he is still bound to render performance to the obligee[.]" The plaintiffs contend that regardless of the terms of the agreements, Multiband merely became an additional obligor to indemnify the plaintiffs; DTSW and DT are still obligors.
We are constrained to observe that Prof. Litvinoff also states, "In other words, the assumption of an obligation by a third person does not effect a novation, unless the obligee clearly expresses his intention to regard the original obligation as extinguished and accept in lieu thereof a new obligation of the third person." The vintage cases on which Art. 1821 is based, Latiolais v. Citizens' Bank of La. , 33 La. Ann. 1444 (1881), and Jacobs v. Calderwood , 4 La. Ann. 509 (1849), are expressly premised on the fact that the creditors never consented to releasing the original obligors. If the creditor grants such consent, a different result obtains, as recognized by Prof. Litvinoff. For the reasons more fully discussed below, the plaintiffs' execution of the Bar Order waived their right to seek any indemnification from DTSW, DT and Multiband. This specification of error lacks merit.
Bar Order as Res Judicata
By their sixth, seventh and eighth specifications of error, and first, third and fourth supplemental specifications, the plaintiffs challenge the district court's finding that the Bar Order constituted res judicata as to their claim for indemnification. The plaintiffs concede that they executed the Bar Order, and that it bars them from seeking contribution or indemnification from "any nonsettling codefendants."
However, they argue that the Bar Order was merely an injunction, not a compromise or release of claims, and cannot serve as the basis of res judicata. In support, they cite Household Fin. Corp. of B.R. v. LeJeune , 205 So.2d 771 (La. App. 1 Cir. 1967), rev'd on other grounds , 252 La. 691, 212 So.2d 546 (1968). Next, they contend that DTSW, DT and Multiband were not parties to the DOL action, so they are not insulated from the plaintiffs' claims for indemnification. They then argue that the Bar Order was not assignable as a defense to a nonparty, and was in fact a strictly personal defense to DTHC which cannot be claimed by DTSW, DT and Multiband. Finally, they submit that even if the right could be assigned, the district court ignored the principle that an assignee acquires only those rights possessed by the assignor at the time of the assignment. Conerly Corp. v. Regions Bank , 668 F.Supp.2d 816, 70 UCC Rep. Serv. 2d 104 (E.D. La. 2009). They contend that when DTSW and DT sold out to Multiband, in 2009, the Bar Order had not yet been issued, so the assignors could not have assigned a right that did not yet exist.
The doctrine of res judicata precludes the relitigation of all causes of action arising out of the same transaction and occurrence that were the subject matter of a prior litigation between the same parties. La. R.S. 13:4231. The preclusive effect of res judicata applies to a nonparty *475 who is a successor in interest of a party. Forum for Equality PAC v. McKeithen , 2004-2551 (La. 1/19/05), 893 So.2d 738 ; Davisson v. Davisson , 52,015 (La. App. 2 Cir. 5/23/18), 248 So.3d 633. A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. La. C.C. art. 3071. A valid compromise may form the basis for a plea of res judicata. Oliver v. Orleans Parish School Bd. , 2014-0329 (La. 10/31/14), 156 So.3d 596, 314 Ed. L. Rep. 1161 ; Red River Waterway Com'n v. Succession of Fry , 45,103 (La. App. 2 Cir. 4/28/10), 36 So.3d 401, writ denied , 2010-1214 (La. 9/17/10), 45 So.3d 1051. A compromise instrument is the law between the parties and is interpreted according to the parties' intent, using the general rules of construction applicable to contracts. Chauvin v. Exxon Mobil Corp. , 2014-0808 (La. 12/9/14), 158 So.3d 761. Public policy favors compromise agreements and the finality of judgments. Brown v. Drillers Inc. , 93-1019 (La. 1/14/94), 630 So.2d 741. A compromise that releases all claims is not ambiguous simply because it is broad. Dumas v. Angus Chem. Co. , 31,969 (La. App. 2 Cir. 8/20/99), 742 So.2d 655, writ not cons. , 99-2750 (La. 11/5/99), 751 So.2d 237, and citations therein.
The Bar Order is part of a document labeled "Consent Judgment & Order Between the Secretary and Defendants Woody Bilyeu, Mary Bilyeu and Patrick Brian Shelton," in the U.S. District Court for the Eastern District of Kentucky, Northern Division at Covington. It recites that the Secretary filed a complaint against these settling defendants for ERISA violations, the parties had negotiated an agreement to settle all claims and issues, the consent judgment was the sole and complete agreement, and includes the language, "It is hereby Ordered, Adjudged and Decreed." Any suggestion that this document is not a compromise or release of claim is utterly baseless and borders on the frivolous. The plaintiffs' first supplemental specification is without merit.
A defense is strictly personal when it requires the special skill or qualification of the obligor, or when performance is intended for the benefit of the obligee exclusively. La. C.C. art. 1766. Personal defenses include interspousal immunity, father-son immunity, an insane person's capacity to be liable for his torts, infancy and coverture, Danzy v. U.S. Fidelity & Guar. Co. , 380 So.2d 1356 (La. 1980), as well as "coverture, lunacy, bankruptcy and the like," Simmons v. Clark , 64 So.2d 520 (La. App. 1 Cir. 1953). Defenses are strictly personal when they are, as a matter of public policy, intended to protect certain persons as members of a protected class. Louisiana Land & Expl. Co. v. Amoco Prod. , 878 F.2d 852 (5 Cir. 1989).
This court is aware of no case holding that res judicata is a strictly personal defense. To the contrary, the formulation that res judicata applies to the successor in interest of a party refutes the contention. Forum for Equality PAC v. McKeithen , supra ; Davisson v. Davisson , supra . In fact, the assuming obligor may raise any defense based on the relationship between the original obligor and the obligee. La. C.C. art. 1824. The case cited by the plaintiffs, Household Fin. Corp. of B.R. v. LeJeune , supra , actually held that discharge in bankruptcy is a strictly personal defense, a fact recognized by cases like Danzy v. U.S. Fidelity & Guar. Co. , and Simmons v. Clark , supra . It simply does not address res judicata. The plaintiffs' sixth specification and fourth supplemental specification of error lack merit.
*476 The Bar Order provides as follows, with emphasis added:
13. Settling Defendants [Woody Bilyeu, Mary Bilyeu and Patrick Shelton], and, as applicable, their agents, representatives, assigns and successors in interest, are permanently and forever barred and enjoined from filing, commencing, instituting, prosecuting, or maintaining, either directly, indirectly, representatively, or in any other capacity, any claim against any of the non-settling Defendants arising under state, federal, or common law, however styled, and in any forum, whether for indemnification, contribution, reimbursement, or other monetary relief, where the claim against any of the non-settling Defendants is based upon, arises out of, relates to the facts, transactions, and occurrences referred to in the Secretary's Complaint, and the claim against any of the non-settling Defendants seeks to recover (i) any amount Settling Defendants have paid pursuant to this Consent Judgment & Order or (ii) any costs, expenses, or attorneys' fees from defending any claim by the Secretary in the Secretary's action. However, nothing in this Section shall be construed or interpreted to bar, enjoin, release or discharge any of the Settling Defendants' claims for indemnification, contribution or other monetary or equitable relief against any person or entity that is not a party to this civil action.
The plaintiffs show that the document never defines "non-settling Defendants" and argue that because Multiband, DTSW and DT were not parties to the DOL action, they could not be insulated from these claims for indemnification.
The plaintiffs' reading of the Bar Order is unduly narrow. The thrust of the DOL action was that the plaintiffs (as "defendants" in the complaint) violated federal law by selling their ESOP shares back to the ESOPs at grossly inflated prices. The tenor of the consent judgment was that the plaintiffs would repay the victims - the ESOPs - an agreed amount of the alleged overcharge, some $ 5.1 million. In exchange for DOL's promise to dismiss claims against the plaintiffs, the plaintiffs agreed not to pursue the victims (DTHC ESOP specifically, and others, the nonsettling Defendants) for any indemnity or reimbursement. Although the Bar Order is broadly phrased, the only reasonable interpretation of it is that the plaintiffs would never pursue the victims for the settlement money just paid. To allow such a claim would obviously defeat the purpose of the consent judgment.
The plaintiffs have never contested that DTSW, DT and Multiband are successors in interest to DTHC. For the reasons already discussed, when DT and DTSW sold 100% of their stock to DTHC, DTHC became bound by the Indemnity Agreements. Later, by the Master Agreement, Multiband assumed all of DTHC's obligations "as if they were the original party thereto." In short, the defendants are entitled to assert DTHC's status as a nonsettling defendant and claim the protection of the Bar Order. The plaintiffs' seventh specification of error and third supplemental specification lack merit.
Further, we agree that as a general rule, an assignor may assign only such rights as he possesses at the time of the assignment. Conerly v. Regions Bank , supra . However, the law recognizes that subsequent events may affect the validity of an assignment or sale that appears to be overbroad. See, e.g. , J-W Operating Co. v. Olsen , 48,756 (La. App. 2 Cir. 1/15/14), 130 So.3d 1017. The Bar Order did not yet exist when DTSW and DT sold out to Multiband, but this long and complex record makes it abundantly clear that in executing *477 the Bar Order, the plaintiffs waived the indemnity claims they are now asserting. The plaintiffs' eighth specification of error lacks merit.
Without specifically designating it as error, the plaintiffs take issue with the district court's obiter dictum that the final sentence of the Bar Order would allow them to pursue "parties such as those who prepared the valuations upon which Plaintiffs relied when they sold their stock to the ESOPs." We recognize that courts should avoid rendering advisory opinions as to hypothetical controversies. Shepherd v. Schedler , 2015-1750 (La. 1/27/16), 209 So.3d 752 ; Thornton v. Carthon , 47,948 (La. App. 2 Cir. 5/15/13), 114 So.3d 554, writ denied , 2013-1785 (La. 11/1/13), 125 So.3d 435. Obviously, this case does not include claims against any person who prepared valuations for the plaintiffs. However, the district court's observation was a reasonable reading of the final sentence of the Bar Order, for the purposes of the instant case. We perceive no reversible error.
Leave of Court to Amend
By their ninth specification of error and seventh supplemental specification, the plaintiffs urge the district court erred in denying leave of court to join an additional defendant which was made in good faith, did not prejudice the defendants and did not delay trial. They argue that amendment of pleadings should be liberally allowed. Reeder v. North , 97-0239 (La. 10/21/97), 701 So.2d 1291 ; Hibernia Nat'l Bank v. Antonini , 33,436 (La. App. 2 Cir. 8/23/00), 767 So.2d 143. They contend that they did not learn of the existence of Multiband Field Services, a successor of Multiband, until after the exception of res judicata had been filed and argued; hence, the amendment was not in bad faith or intended to delay trial, and is the equitable remedy in this situation.
After an answer to petition has been served, the plaintiff may amend the petition only by leave of court or by written consent of the adverse party. La. C.C.P. art. 1151. The law takes a liberal approach to allowing amended pleadings to promote the interests of justice. Reeder v. North , supra .Amendment is generally allowed, provided the mover is acting in good faith, the amendment is not sought as a delaying tactic, the opponent will not be unduly prejudiced, and the trial of the issues will not be unduly delayed. Giron v. Housing Auth. of City of Opelousas , 393 So.2d 1267 (La. 1981). The decision to allow or disallow amendment is within the trial court's broad discretion. Giron v. Housing Auth. , supra ; Short v. Short , 40,136 (La. App. 2 Cir. 9/23/05), 912 So.2d 82, writ denied , 2005-2320 (La. 3/10/06), 925 So.2d 519. The right to amend does not extend to situations where it is apparent that the defect could not be corrected by amendment. Magill v. Lowery , 43,261 (La. App. 2 Cir. 5/7/08), 990 So.2d 18, writ denied , 2008-1237 (La. 10/10/08), 993 So.2d 1283. Amendment is not permitted when it would be a vain and useless act, such as after the grant of a peremptory exception. Hershberger v. LKM Chinese LLC , 2014-1079 (La. App. 4 Cir. 5/20/15), 172 So.3d 140.
On close examination, we find no abuse of the district court's discretion. Although the defendants' belated disclosure of the existence of Multiband Field Services is not exemplary practice, there is no showing that the joinder of this defendant would cure the exception of res judicata. The record shows that Multiband Field Services is a successor in interest to DT and DTSW, two entities that are entitled to assert the Bar Order as a defense to this indemnity claim. Joinder of yet another *478 defendant that can claim the benefit of the Bar Order would be a vain and useless act. These specifications lack merit.
CONCLUSION
For the reasons expressed, the judgments are affirmed. All costs are to be paid by the plaintiffs, Woody D. Bilyeu, Mary H. Bilyeu and Patrick B. Shelton.
AFFIRMED .
APPLICATION FOR REHEARING
Before Felicia Toney Williams, Daniel Milton Moore III - Writing, Jeanette Giddens Garrett, James Mark Stephens, E. Joseph Bleich, JJ.
Rehearing denied.

Bilyeu Bucks LLC v. DirecTECH Southwest Inc. , 45,870 (La. App. 2 Cir. 9/13/10) (unpub. writ grant), writ not cons. , 2010-2591 (La. 1/14/11), 52 So.3d 891.

In separate litigation, the plaintiffs unsuccessfully claimed that fiduciary and errors-and-omissions insurance policies should cover this loss. Bilyeu v. National Fire Ins. Co. of Pittsburgh, Pa. , 50,049 (La. App. 2 Cir. 9/30/15), 184 So.3d 69, 60 Emp. Ben. Cases 2977, writ denied , 2015-2277 (La. 2/19/16), 187 So.3d 462.