893 So.2d 738 (2005)
FORUM FOR EQUALITY PAC, a Registered Louisiana Political Action Committee, Log Cabin Republicans, an Unincorporated Louisiana Association, Laurence E. Best, Jeanne M. LeBlanc, Gerald W. Thibodeaux, William Schultz and Julie A. Jacobs
v.
The Honorable W. Fox McKEITHEN, in His Official Capacity as Secretary of State Only, and Not Individually, and the City of New Orleans.
No. 2004-OC-2551.
Supreme Court of Louisiana.
January 19, 2005.
*740 PER CURIAM.
This application for supervisory writs is a companion to the appeal in Forum for Equality PAC v. The Honorable W. Fox McKeithen, 04-CA-2477 c/w 04-CA-2523, 893 So.2d 715 and involves certain issues which were pretermitted by the district court. Because of the importance of this case to the citizens of this state, we have elected to exercise our supervisory jurisdiction to consider these issues.

FACTS AND PROCEDURAL HISTORY
The underlying facts of this case are set forth in detail in our opinion in Forum for Equality PAC v. The Honorable W. Fox McKeithen, 04-CA-2477 c/w 04-CA-2523, 893 So.2d 715, rendered this day. Essentially, plaintiffs filed a constitutional challenge to 2004 La. Acts 926 (hereinafter referred to as "Act 926"), which proposed a constitutional amendment entitled "Defense of Marriage" and which was approved by the voters at the September 18, 2004 election. Plaintiffs challenged the amendment and election on six separate grounds: (1) fatal irregularities occurred in the Orleans Parish election; (2) the Louisiana Election Code is unconstitutional and fatally defective under La. Const. Art. XI, § 1; (3) the amendment is unconstitutional because it violates La. Const. Art. I, the Declaration of Rights; (4) the amendment is unconstitutional because it violates the "single object" provision of La. Const. Art. XIII, § 1; (5) the amendment is unconstitutional because it violates La. Const. Art. XIII, § 1, in that a proposed amendment must be pre-filed prior to the legislative session where it is approved; (6) the amendment is unconstitutional because it violates La. Const. Art. XIII, § 1 which requires that a proposed constitutional amendment be submitted to the voters at a statewide election.
Defendants filed an exception of res judicata in response to plaintiffs' challenge that the amendment was not considered by the voters at a statewide election. Defendants asserted that this same argument had been considered in Forum for Equality PAC v. City of New Orleans, 04-1521 (La.App. 4 Cir. 8/30/04), 881 So.2d 777, writ not considered, 04-2239 (La.9/2/04), 882 So.2d 587.
The district court granted defendants' exception of res judicata as to the statewide election issue. The court then declared the proposed constitutional amendment unconstitutional because it violated the "single object" provision of La. Const. Art. XIII, § 1. Having found the proposed constitutional amendment unconstitutional on this ground, the court found it "unnecessary" to rule upon plaintiffs' remaining constitutional challenges.
Defendants appealed the district court's judgment of unconstitutionality to this court. Plaintiffs filed the present application for supervisory writs, asserting the district court erred in granting defendants' exception of res judicata and in failing to rule on their other constitutional challenges.
In our opinion in 04-CA-2477 c/w 04-CA-2523, rendered this day, we reverse the district court's judgment holding that the proposed amendment violated La. Const. Art. XIII, § 1. Ordinarily, in light of this holding, we might remand the remaining issues to the district court for its consideration. However, because of the significance of this case to the public, we now exercise our supervisory jurisdiction to consider plaintiffs' alternative arguments.[1]See Perschall v. State, 96-0322 (La.7/1/97), 697 So.2d 240.

*741 ASSIGNMENTS OF ERROR

Assignment of Error No. 1
Plaintiffs argue the constitutional amendment proposed by Act 926 violates the Louisiana Declaration of Rights set forth in La. Const. Art. I, § 1.[2] Plaintiffs focus on the language in La. Const. Art. I, § 1 which provides "the rights enumerated in this Article are inalienable by the state and shall be preserved inviolate by the state." According to plaintiffs, the proposed amendment discriminates based on sexual orientation and therefore conflicts with La. Const. Art. I, § 1.
Nearly one hundred years ago, this court explained that "[t]he power of the people to amend or revise their Constitutions is limited only by the prohibitions set forth in the Constitution of the United States." Louisiana Ry. & Navigation Co. v. Madere, 124 La. 635, 50 So. 609, 611 (1909). We reaffirmed that principle in Police Jury of Washington Parish v. All Taxpayers, Property Owners and Citizens of Industrial Dist. No. 1 of Washington Parish, 278 So.2d 474, 478 (La.1973), in which we explained "[t]here is, in fact, no limitation upon the power of the people of Louisiana to amend their Constitution in any respect, providing that the amendment does not conflict with the Constitution of the United States."
In Graham v. Jones, 198 La. 507, 3 So.2d 761, 767 (1941), we recognized a bedrock principle of the republican form of government  namely, that the people are the source of political power and written constitutions act as a limitation on the government rather than the people. This reasoning is consistent with the language of La. Const. Art. I, § 1, which provides "[t]he rights enumerated in this Article are inalienable by the state and shall be preserved inviolate by the state." [emphasis added]. Accordingly, the constitution does not and cannot limit the plenary power of the people of this state to exercise their right to adopt amendments to their constitution not inconsistent with the Constitution of the United States.[3]
There is no merit to this assignment of error.

Assignment of Error No. 2
Plaintiffs argue that the election for the constitutional amendment was invalid because it was conducted under an election code that is unconstitutionally defective under La. Const. Art. XI. Plaintiffs maintain the election code fails to satisfy the requirements of this article because it does not provide for full judicial review of *742 all proposed constitutional amendments before and after the election.
The language in La. Const. Art. XI, § 1 is clear and unambiguous, providing that "the legislature shall adopt an election code which shall provide for permanent registration of voters and for the conduct of all elections." Pursuant to this mandate, the legislature adopted an election code. That code provides a method to contest a proposed constitutional amendment in La. R.S. 18:1401 et seq. Specifically, La. R.S. 18:1405 C provides:
An action contesting an election on a proposed constitutional amendment shall be instituted within ten days after promulgation of the results of the election by the secretary of state. [emphasis added].
Contrary to plaintiffs' assertions, nothing in the plain language of La. Const. Art. XI, § 1 prohibits the legislature from enacting an election code which includes provisions for contesting elections for constitutional amendments after the election as opposed to before the election. We find the legislature's decision to provide a procedure for post-election challenges of an election on a constitutional amendment approved by the voters is reasonable and consistent with the jurisprudence of this court. See State ex rel. Bussie v. Fant, 216 La. 58, 43 So.2d 217, 219 (1949) ("[a]s a general proposition of law, the validity or constitutionality of an ordinance will not be determined or passed on by a court until the ordinance is adopted"). A pre-election challenge would result in a waste of judicial resources by requiring courts to pass on procedural issues related to proposed amendments which are ultimately rejected by the voters.
Accordingly, we see nothing in the election code's provisions regarding the procedure to challenge an election on a proposed constitutional amendment which is contrary to La. Const. Art. XI.
There is no merit to this assignment of error.

Assignment of Error No. 3
Plaintiffs assert the legislature violated the pre-filing requirements of La. Const. Art. XIII, § 1.[4] In support, plaintiffs point to numerous differences from the pre-filed version of Act 926 and the final version approved by the legislature.
We find the pre-filing requirements of La. Const. Art. XIII, § 1 must be read in para materia with the other provisions of the constitution defining the legislature's power to amend bills. In particular, La. Const. Art. III, § 15(C) provides, "[n]o bill shall be amended in either house to make a change not germane to the bill as introduced."
We interpreted the provisions of La. Const. Art. III, § 15(C) in Louisiana Public Facilities Authority v. Foster, 01-0009 (La.9/18/01), 795 So.2d 288. In our opinion, we concluded that this article should be given a broad interpretation:
La. Const. Art. III, § 15(C) prohibits the legislature from amending a bill to make changes not germane to the bill as introduced. The constitutional article providing that amendments to bills must be "germane" must be construed broadly, rather than narrowly, with the view of effectuating, not frustrating, the legislative process. Jones v. Board of Ethics *743 for Elected Officials, 605 So.2d 1064 (La.1992). What is "germane" is that which is in close relationship, appropriate, relevant, or pertinent to the general subject. A. & M. Pest Control Service, Inc. v. LaBurre, 247 La. 315, 170 So.2d 855 (1965).
Considering these principles, we now compare the pre-filed version of Act 926 with the version finally adopted by the legislature. The pre-filed form of Act 926 originally sought to amend the state constitution by adding La. Const. Art. I, § 27 to define marriage as consisting only of the union of one man and one woman:
§ 27. Definition of Marriage
Section 27. Marriage in the state of Louisiana shall consist only of the union of one man and one woman. Neither this constitution nor state law shall be construed to require that marital status or the legal incidents thereof be conferred upon unmarried couples or groups. No official or court of the state of Louisiana shall recognize any marriage contracted in any other jurisdiction which is not the union of one man and one woman.
The final version, passed after the amendments of the legislative process, proposed adding La. Const. Art. XII, § 15. The proposed version of La. Const. Art. XII, § 15 is largely identical to the earlier proposed version of La. Const. Art. I, § 27, with the exception of the highlighted language:
§ 15. Defense of Marriage
Section 15. Marriage in the state of Louisiana shall consist only of the union of one man and one woman. No official or court of the state of Louisiana shall construe this constitution or any state law to require that marriage or the legal incidents thereof be conferred upon any member of a union other than the union of one man and one woman. A legal status identical or substantially similar to that of marriage for unmarried individuals shall not be valid or recognized. No official or court of the state of Louisiana shall recognize any marriage contracted in any other jurisdiction which is not the union of one man and one woman. [emphasis added].
In arguing that the final version of Act 926 differs from the pre-filed version, plaintiffs point out that the title of the amendment changed from "Definition of Marriage" to "Defense of Marriage." However, we find this change is appropriate, pertinent and relevant to the general subject matter of Act 926, as both titles indicate the intent of the amendment is to set out the parameters of marriage in Louisiana.
Turning to the text, it is obvious that the changes in the second sentence are stylistic and do not change the sense of the original proposal in any significant manner. The addition of the third sentence, which provides that a legal status identical or substantially similar to that of marriage for unmarried individuals shall not be valid or recognized, clearly bears a close relationship which is appropriate, relevant and pertinent to the general purpose of Act 926.[5]
*744 Accordingly, we find the pre-filed version of Act 926 does not differ from the final version of the joint resolution, because the legislative amendments to the joint resolution complied with the requirements of La. Const. Art. III, § 15(C) that the amendments be "germane to the bill as introduced."
There is no merit to this assignment of error.

Assignment of Error Nos. 4 & 5
Plaintiffs argue the trial court erred in granting defendants' exception of res judicata as to their claim that the election for the constitutional amendment was not a "statewide election" as required by La. Const. Art. XIII, § 1. Assuming we accept their assertion that res judicata does not bar their argument, plaintiffs ask us to find that the September 18, 2004 election at which the proposed amendment was adopted does not satisfy the definition of a statewide election, because three parishes (East Carroll, Plaquemines and Richland) had nothing on their ballots on September 18 except for the amendment.
We take judicial notice of the fact that the question of whether the September 18, 2004 election was a statewide election was first raised in parallel proceedings in Orleans Parish filed by the Forum for Equality PAC, Lawrence E. Best, Jeanne M. LeBlanc and William A. Schultz against the City of New Orleans and the Honorable W. Fox McKeithen in his capacity as Secretary of State. On appeal, the Court of Appeal, Fourth Circuit, rejected plaintiffs' contention that the September 18, 2004 election was not a statewide election. Forum for Equality PAC v. City of New Orleans, 04-1521 at p. 10-11 (La.App. 4th Cir.8/30/04), 881 So.2d 777, 784. In its opinion, the court explained:
Ordinarily, by virtue of La. R.S. 18:402 F(2), in the year 2004 the election should be held on Saturday, October 2, 2004. However, because one of the days of Sukkoth falls on October 2, 2004, by virtue of La. R.S. 18:402 G, the election would have been held on the same day of the preceding week, i.e., on Saturday, September 25, 2004. However, September 25, 2004 is Yom Kippur. Again, by virtue of La. R.S. 18:402 G, the election must be held on the same day of the preceding week, i.e., on Saturday, September 18, 2004.
That several voting precincts in Louisiana may have nothing other than the proposed amendment on the ballot is of no moment because the electors in those parishes are being afforded an opportunity to express their preference on the proposed amendment on the same day as all other electors in Louisiana.
Plaintiffs sought review of that judgment in this court. However, we declined to consider the application on the ground that it was not timely filed. Accordingly, the court of appeal's judgment is now final.
*745 Relying on this final judgment, defendants filed an exception of res judicata in the instant case, asserting plaintiffs were precluded from arguing the September 18, 2004 election was not a statewide election. The district court granted that exception.
An examination of the res judicata provision, La. R.S. 13:4231, reveals that a second action is precluded when all of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. Burguieres v. Pollingue, 02-1385 (La.2/25/03), 843 So.2d 1049. The sole element disputed by plaintiffs is the third element, relating to the identity of the parties. Specifically, plaintiffs assert there are three new plaintiffs in the instant litigation (Louisiana Log Cabin Republicans, Gerald Thibodeaux and Julie Jacobs). Because these plaintiffs were not parties to the Orleans Parish litigation, plaintiffs argue they should not be subject to res judicata.
In Welch v. Crown Zellerbach Corp., 359 So.2d 154, 156 (La.1978), we explained that "[t]here exists an identity of parties whenever the same parties, their successors, or others appear so long as they share the same `quality' as parties." In Hudson v. City of Bossier, 33,620 at p. 8 (La.App. 2 Cir. 8/25/00), 766 So.2d 738, 743, the appellate court, relying on federal jurisprudence interpreting res judicata provisions analogous to those under our state law, found that the preclusive effect of a judgment could bind a nonparty whose interests were adequately represented by parties to the litigation:
Under federal law, the preclusive effect of a judgment binds the parties to the action and nonparties who are deemed the "privies" of the parties in these limited circumstances: (1) the nonparty is the successor in interest of a party; (2) the nonparty controlled the prior litigation; or (3) the nonparty's interests were adequately represented by a party to the action who may be considered the "virtual representative" of the nonparty because the interests of the party and the nonparty are so closely aligned. Gilbert v. Visone, 30,204 (La.App.2d Cir.02/25/98), 708 So.2d 496; Condrey v. Howard, 28,442 (La.App.2d Cir.08/21/96), 679 So.2d 563, writ denied, 96-2335 (La.11/22/96), 683 So.2d 281, citing Meza v. General Battery Corp., 908 F.2d 1262 (5th Cir.1990).
The interests of the additional parties in the instant litigation who were not parties to the Orleans Parish litigation are closely aligned with the interests of the parties in the Orleans Parish litigation. Under these circumstances, we must conclude their interests were adequately represented by the parties in the Orleans Parish litigation.
Accordingly, we find no error in the ruling of the district court granting defendants' exception of res judicata as to plaintiffs' claim that the September 18, 2004 election was not a statewide election. Based on this finding, we pretermit any discussion of the merits of plaintiffs' argument that the September 18, 2004 election was not a statewide election.
There is no merit to these assignments of error.

Assignment of Error No. 6
Plaintiffs argue the September 18, 2004 election is invalid due to widespread voting irregularities in Orleans Parish. Plaintiffs argue these irregularities serve to invalidate the proposed amendment, because La. Const. Art. XIII, § 1(C) provides *746 "a proposed amendment directly affecting not more than five parishes or areas within not more than five parishes shall become part of this constitution only when approved by a majority of the electors voting thereon in each affected parish." Plaintiffs maintain that pursuant to La. Const. Art. XIII, § 1(C), the proposed amendment must be approved by a majority of electors voting in the state and a majority in Orleans Parish because the proposed amendment directly affects only Orleans Parish by invalidating the Domestic Partner Registry Ordinance.
A plain reading of Act 926 reveals that the proposed amendment is not limited to Orleans Parish, but is clearly intended to have statewide application. Accordingly, the special provisions of La. Const. Art. XIII, § 1(C) relating to amendments affecting not more than five parishes is inapplicable.[6]
We find no merit to this assignment of error.

DECREE
For the reasons assigned, the judgment of the district court granting defendants' exception of res judicata as to plaintiffs' claims that the September 18, 2004 election was not a statewide election is affirmed. Plaintiffs' remaining constitutional challenges to the election and proposed constitutional amendment are found to be without merit and are hereby dismissed.
NOTES
[1] Plaintiffs also filed an answer to defendants' appeal, raising these same contentions. It is questionable whether an answer is procedurally proper, because plaintiffs do not necessarily seek to have the district court's judgment of unconstitutionality "modified, revised or reversed in part" for purposes of La.Code Civ. P. art. 2133(A). Rather, it appears they are simply urging alternate grounds in support of the judgment of unconstitutionality, which does not require an answer under La.Code Civ. P. art. 2133(B). In any event, because we elect to pass on the issues raised by plaintiffs in their application for supervisory writs (which are identical to those raised in their answer to the appeal), we need not resolve the issue of whether the answer to the appeal is procedurally proper.
[2] La. Const. Art. I, § 1 provides:

All government, of right, originates with the people, is founded on their will alone, and is instituted to protect the rights of the individual and for the good of the whole. Its only legitimate ends are to secure justice for all, preserve peace, protect the rights, and promote the happiness and general welfare of the people. The rights enumerated in this Article are inalienable by the state and shall be preserved inviolate by the state.
[3] Plaintiffs have not alleged, nor do we find, that the proposed amendment conflicts with any provision of the Constitution of the United States.
[4] La. Const. Article XIII, § 1 provides, in pertinent part:

Section 1. (A) Procedure. An amendment to this constitution may be proposed by joint resolution at any regular session of the legislature, but the resolution shall be prefiled, at least ten days before the beginning of the session, in accordance with the rules of the house in which introduced.
[5] Plaintiffs also point to changes which were made to the introductory language of the Act. The original version of the introduction provided:

Proposing an amendment to the Constitution of Louisiana, to enact Article I, Section 27, relative to marriage; to define marriage; to prohibit the conference of marital rights; to provide for submission of the proposed amendment to the electors; and to provide for related matters.
The final version of introduction provides:
Proposing an amendment to the Constitution of Louisiana, to enact Article XIII, Section 15, relative to marriage; to require that marriage in the state shall consist only of the union of one man and one woman; to provide that the legal incidents of marriage shall be conferred only upon such union; to prohibit the validation or recognition of the legal status of any union of unmarried individuals; to prohibit the recognition of a marriage contracted in another jurisdiction which is not the union of one man and one woman; to provide for the submission of the proposed amendment to the electors and provide a ballot proposition; and to provide for related matters.
The different versions of the introduction reflect the changes to the Act made during the legislative process. Because we finding these legislative amendments were appropriate, relevant and pertinent to the general purposes of the Act, it follows that the changes to the introductory language are likewise a permissible exercise of legislative power under La. Const. Art. III, § 15(C).
[6] Because of this finding, we need not reach the issue of whether any voting irregularities occurred in Orleans Parish. Moreover, we note the statewide results of the September 18, 2004 election show that 618,908 electors voted in favor and 177,067 electors voted against the proposed amendment. Because the amendment passed by 442,841 votes, any purported irregularities in Orleans Parish would not have changed the result of the election.