SUCCESSION OF
CARLE LAINE CARPENTER

NO. 22-CA-192

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 12,590, DIVISION "D"
HONORABLE M. LAUREN LEMMON, JUDGE PRESIDING


February 01, 2023


**SUSAN M. CHEHARDY**
**CHIEF JUDGE**


Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and Stephen J. Windhorst


**<u>AFFIRMED IN PART,</u>**
**<u>REVERSED IN PART,</u>**
**<u>EXCEPTION OF PRESCRIPTION GRANTED,</u>**
**<u>PETITION FOR ABSOLUTE NULLITY DISMISSED</u>**
    **SMC**
    **MEJ**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
CARLA LACOUR, GRACE LACOUR, AND KEVIN LACOUR
    Brad P. Scott
    Kameron P. Whitmeyer
    Kayla Martynenko

COUNSEL FOR DEFENDANT/APPELLEE,
MARCUS CARPENTER
    Steven M. Mauterer

**CHEHARDY, C.J.**

In this succession matter, the appellants, Carla, Grace, and Kevin LaCour, who are the daughter, granddaughter, and son-in-law of the decedent, respectively, appeal the ruling of the trial court granting the appellee's exceptions of res judicata and no right of action and dismissing the appellants' petitions to probate the lost will of the decedent, Carle Laine Carpenter, and overruling a peremptory exception of prescription. For the reasons that follow, we affirm in part and reverse in part.

*Background and Procedural History*

Carle Laine Carpenter ("decedent") died in St. Charles Parish on June 6, 2019. He had been married twice – first to Carolyn Sue Avent Carpenter, who died in 1963, and later to Fabaria Ann Dunnamvet Carpenter, who died on January 6, 2018. Marcus Lane Carpenter is the only child born of decedent's first marriage, and Carla Frances Carpenter LaCour is the only child from decedent's second marriage. At the time of decedent's death, his granddaughter Grace was 19 years old.

On August 19, 2019, Marcus filed a Petition for Request for Notice of Application for Appointment of Administrator, For Notice of Trial, and for Signing of Any Final Judgment and/or the Rendition of Any Interlocutory Judgment. Almost six months later, Marcus filed a Petition for Appointment as Administrator of decedent's estate. The Petition represented that although Marcus held a copy of a March 28, 2003 Last Will and Testament executed by decedent, he was not presenting that will for probate because the decedent allegedly had revoked it, and decedent died intestate. The trial court appointed Marcus as Administrator on March 3, 2020.

On March 20, 2020, Carla, through her attorney Michael Zerlin, filed a Petition to Probate Will and Remove and Replace Administrator. Carla's Petition claimed that the decedent had placed the original 2003 Last Will and Testament in

her custody and that the original will was attached to the Petition. Carla's Petition alleges that Marcus is not an heir and that the will names Carla as Executrix. The copy of the 2003 Last Will and Testament indicated that in the event Carle's second wife (Fabaria) predeceased him, his entire estate should go to his granddaughter, Grace LaCour, to be held in trust until she turned 25 years old, with Grace's mother, Carla, to serve as Trustee. If Carla was not able to serve as Trustee, then Grace's father, Kevin LaCour, was to serve as Trustee.

Carla's Petition to Probate Will (and remove Marcus as Administrator) was set for contradictory hearing on June 30, 2020. At the hearing, the parties discussed the fact that the will attached to Carla's Petition was a copy, not the original. Accordingly, the parties, each represented by counsel, entered into an "Interim Consent Judgment" that continued the contradictory hearing to July 22, 2020, to give Carla time produce the original will. According to the Interim Consent Judgment, as stated by counsel for Marcus, if Carla could not produce the original will, her Petition to Probate would be dismissed with prejudice:

> If Mr. Zerlin and his client are unable to locate the original of the last will and testament of the decedent, then, in that event, Mr. Zerlin and his client will execute a consent judgment acknowledging the fact that there is no will, that it has been revoked. They will withdraw their plea to probate the copy and have my client removed and Mr. Zerlin's client appointed [as executrix]. That will become moot.

Both Carla and Marcus were sworn in and stated on the record that this was their agreement. Counsel for Marcus questioned Carla:

> Q:   Ms. Lacour, you've heard what I dictated into the record a few minutes ago?
> A:   Yes.
> Q:   And your counsel, Mr. Zerlin, was present in the room?
> A:   Yes.
> Q:   And do you agree with the terms of that interim consent judgment?
> A:   Yes.
> Q:   You will abide by it?

A:      Yes.
Q:      And you have done that with advice of counsel?
A:      Yes.

The trial court asked counsel to prepare a judgment indicating that the matter was continued to July 22, 2020, and told the parties to notify the court immediately if the matter became moot. The trial court signed a written Interim Consent Judgment that memorialized the parties' agreement on July 13, 2020.

On July 22, 2020, Mr. Zerlin, counsel for Carla, sent a letter to the trial court indicating that no original will could be found and that the Petition could be dismissed with prejudice. At the hearing that had been scheduled for that day, counsel for Marcus introduced the July 22, 2020 letter from Mr. Zerlin as evidence in the record. On August 7, 2020, the trial court entered a Consent Judgment, which stated:

> This matter came before the Court on July 22, 2020, on Carla LaCour's Petition to Probate Will And Remove And Replace Administrator.
>
> PRESENT:  Marcus Lane Carpenter and his attorney, Robert L. Raymond
>
> ABSENT:   Carla Lane LaCour and her attorney, Michael Zerlin
>
> UPON THE CONSENT OF THE PARTIES:
>
> Based on the fact that Carla LaCour failed to produce for probate in open court on July 22, 2020, after due notice the original of the Last Will and Testament of Carle Laine Carpenter,
>
> IT IS ORDERED, ADJUDGED AND DECREED that the Petition to Probate Will and Remove and Replace Administrator filed by Carla LaCour is hereby dismissed with prejudice at her cost.

Notices of Judgment in the record indicate that copies of the Consent Judgment were mailed to counsel for Marcus and counsel for Carla on August 10, 2020. Carla did not object to this Consent Judgment or seek appellate review.

Nine months later, on May 12, 2021, after retaining new counsel and filing a preliminary sworn description list, Marcus filed a Petition for Absolute Nullity, alleging that decedent's second wife, Fabaria, allegedly used community funds in October 1993 to purchase property at 505 and 505-1/2 Westbank Expressway in her name only. The Petition for Nullity alleges that Fabaria took her husband Carle to attorney Michael Zerlin on February 26, 2003, to have him sign a quitclaim deed purportedly transferring Carle's interest in the Westbank Expressway property to Fabaria for $10.00 and other valuable consideration. The Petition for Absolute Nullity alleges that it was "well known that Carle could not read and write" and thus he did not understand the nature of the quitclaim deed. A month later, on March 28, 2003, Fabaria and Carle executed separate Last Wills and Testaments before Mr. Zerlin. According to the Petition for Nullity, Fabaria's Last Will and Testament bequeathed her interest in the property at 505 and 505-1/2 Westbank Expressway to her granddaughter, Grace LaCour, with usufruct for life to Carle, including but not limited to rents received on the property.

Fabaria died on January 6, 2018, and a Judgment of Possession was entered in her succession that left everything to Carle except for the Westbank Expressway property, which allegedly was left to Grace.

In his Petition for Absolute Nullity, Marcus contends that one of the witnesses to the quitclaim deed cannot remember executing it and cannot remember Carle. Marcus also contends that it was highly unlikely that this witness actually witnessed Carle sign the quitclaim deed or, a month later, his Last Will and Testament, because in February and March of 2003, the witness was attending the University of Tennessee-Knoxville, approximately 650 miles away from Mr. Zerlin's office. As such, Marcus contends that the quitclaim deed must be rendered absolutely null. According to Marcus, if the quitclaim deed is declared an absolute

nullity, the property would have transferred to Carle upon Fabaria's death. Then upon Carle's death, the property would transfer to his heirs, Marcus and Carla.

On June 30, 2021, having obtained new counsel, Carla filed a Petition for Probate of Lost Notarial Will. Carla alleged that the original Last Will and Testament "was in existence and under her control and custody as of the date of death of the Decedent and was lost thereafter after being delivered to her prior legal counsel [Mr. Zerlin]."[1] Carla contends that because the decedent did not have the original will in his possession before his death, the presumption that he destroyed the will before his death is rebutted.

On July 16, 2021, decedent's granddaughter, Grace, also filed a Petition for Probate of Lost Notarial Will, claiming that she was the sole legatee in decedent's 2003 Last Will and Testament. On July 19, 2021, Carla filed a Motion to Withdraw and Dismiss the Petition for Probate of Lost Notarial Will that she had filed on June 30, 2021. On July 23, 2021, Marcus filed an Opposition to Carla's Motion to Withdraw and Dismiss her Petition for Probate of Lost Notarial Will, requesting a contradictory hearing and asking that if the trial court decides to dismiss Carla's Petition to Probate, that it be done with prejudice.

On July 29, 2021, Grace filed a First Amended Petition for Probate of Lost Notarial Will, to include as an additional party plaintiff her father, Kevin LaCour, who is named in the copy of decedent's 2003 Last Will and Testament as an alternate trustee in the event that Carla cannot serve as trustee. According to the Amended Petition, Carla "has declined her appointment as trustee." As such, Kevin "has accepted his appointment as trustee in the event the last will and testament is accepted for probate by the Court." Affidavits from Carla and from

_____

[1] Mr. Zerlin is the same attorney who notified the trial court nine months earlier that the original will could not be located, and that Carla's Petition to Probate Will and Remove and Replace Administrator could be dismissed with prejudice.

Kevin were attached in which Carla declined to serve as trustee, and Kevin agreed to serve as trustee.

On August 4, 2021, Carla filed a motion to remove the Administrator, to turn over estate assets, and to compel an accounting. That motion states: "In the event this Court accepts and probates the March 28th, 2003 last will and testament of Decedent, … it will be necessary to transfer the administration of the estate" from Marcus to Carla.

On August 9, 2021, in response to the Petitions and Amended Petition for Probate of Lost Notarial Will (filed by Carla, Grace, and Kevin), and the motion to remove him as Administrator (filed by Carla), Marcus filed Exceptions of No Right of Action and Res Judicata. Marcus argued that Grace has no right of action because she is not a legatee under the decedent's 2003 will; she was only 19 years old when her grandfather died, she is now 22 years old, and if the 2003 will were probated, she would be the beneficiary of a trust. Until she is 25 years old, the trustee, not the trust's beneficiary, is the proper party plaintiff to an action to enforce the rights of the trust under La. C.C.P. art. 699.

Further, Marcus contended that because Carla bound the office of trustee through the 2020 final consent judgment dismissing with prejudice her Petition to Probate Will and Remove Administrator, she compromised any future right to probate the 2003 Last Will and Testament as a "lost will."

In response to the Petition for Absolute Nullity (of the 2003 quitclaim deed) that Marcus filed, Carla and Grace filed a Peremptory Exception of Prescription. They argue that there is no claim for absolute nullity, only potential allegations of relative nullity, but that the relative nullity claims prescribed five years after the quitclaim deed was executed. On the other hand, Marcus argues that his claim for absolute nullity is valid; that the absolute nullity claim never prescribes; and that even if he asserted claims for relative nullity only, those claims have not prescribed

under the doctrine of *contra non valentem*, because he had no knowledge of the quitclaim deed until his father's death.

Ruling from the bench, the trial court granted the exceptions of res judicata and no right of action and denied the peremptory exception of prescription. Appellants Carla, Grace, and Kevin LaCour now appeal the trial court's rulings.[2]

*Res Judicata*

Appellants contend that the trial court erred in granting the exception of res judicata and dismissing the LaCours' Petitions to Probate Lost Will. We review the exception of res judicata under a de novo standard of review. *Woodlands Development, L.L.C. v. Regions Bank*, 16-324 (La. App. 5 Cir. 12/21/16), 209 So.3d 335, 340. To succeed in an exception of res judicata under La. R.S. 13:4231, the party urging the exception must prove that the first judgment is (1) valid, (2) final, and (3) entered among the same parties to the second suit; (4) that the cause of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) that the cause of action asserted in the second suit arose out of the transaction or occurrence that was the subject of the first litigation. *Chevron U.S.A., Inc. v. State*, 08-2469 (La. 9/8/08), 993 So.2d 187, 194.

Appellees do not dispute that the Consent Judgment was valid and final. They argue instead that the trial court erred in granting the exception of res judicata because the subject matter of the petition to probate the lost notarial will is not the same as the subject matter of the consent judgment, in which Carla conceded that the notarial will could not be found. Further, appellants contend that the parties are not the same between the first and second action, because the first

---

[2] Appellants' single assignment of error states that they also seek review of the trial court's ruling granting the exception of no right of action that Marcus filed. However, appellants have provided no briefing on this issue. As such, we find this issue is abandoned on appeal. *See* Uniform Rules – Courts of Appeal, Rule 2-12.4 B(4) ("All assignments of error and issues for review shall be briefed. The court may deem as abandoned any assignment of error or issue for review which has not been briefed."); *Boutall v. Christakis, P.M., Co. LLC*, 17-402 (La. App. 5 Cir. 12/27/17), 236 So.3d 1268, 1272.

action involved Carla only, but the 2021 petitions to probate the lost notarial will include Carla's daughter and husband, Grace and Kevin. Third, appellants contend that this situation constitutes the kind of "exceptional circumstances" that warrant relief from the application of res judicata under La. R.S. 13:4232.

The chief inquiry on an exception of res judicata is whether the second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action. *Lozier v. Estate of Elmer*, 08-225 (La. App. 5 Cir. 9/30/08), 996 So.2d 511, 513. A cause of action that could not have been asserted before the final judgment was entered would not be precluded by res judicata under La. R.S. 13:4231.

We find no merit in appellants' argument that the 2021 petitions to probate the lost notarial will did not arise from the same circumstances surrounding the 2020 consent judgment. Mr. Zerlin, counsel for Carla, sent a letter to the trial court specifically stating that the 2003 will could not be found and that Carla's petition could be dismissed with prejudice. "When a will cannot be found at the testator's death, there arises a presumption that the testator has destroyed the will with the intent of revoking it." *Succession of Talbot*, 530 So.2d 1132, 1134-35 (La. 1988). This presumption may be rebutted by: (1) clear proof that the testator made a valid will, (2) proof of the contents or substance of the will, and (3) a showing that the will was never revoked by the testator. *Succession of Claiborne*, 99-2415 (La. App. 1 Cir. 11/3/00), 769 So.2d 1267, 1268, *writs denied*, 00-3283, 00-3310 (La. 2/16/01), 786 So.2d 98, 99. The record before us suggests that all parties—and counsel—must have agreed at that time that decedent had revoked the 2003 will, leading to the consent judgment dismissing with prejudice the petition to probate the will. That appellants obtained new counsel after Carla consented to the dismissal does not lend credence to their argument that a petition to probate a lost notarial will had not yet arisen. A dismissal with prejudice has the same effect as a

final judgment of dismissal after trial, and extinguishes all causes of action existing at the time of the final judgment that arise from the same transaction or occurrence. *Bailey v. Exxon Mobil Corp.*, 15-313 (La. App. 5 Cir. 12/23/15), 184 So.3d 200, 206-7.

Second, appellants' contention that there was no identity of parties for res judicata purposes also lacks merit. The preclusive effect of res judicata applies to a nonparty who is a successor in interest of a party. *Forum for Equality PAC v. McKeithen*, 04-2551 (La. 1/19/05), 893 So.2d 738, 745. Identity of parties is satisfied when a privy of one of the parties is involved. *Burguieres v. Pollingue*, 02-1385 (La. 2/25/03), 843 So.2d 1049, 1052 n.3. In its broadest sense, "privity" is the mutual or successive relationship to the same right of property, or such an identification in interest of one person with another as to represent the same legal right. *Five N Co., L.L.C. v. Stewart*, 02-181 (La. App. 1 Cir. 7/2/03), 850 So.2d 51, 61. "There exists an identity of parties whenever the same parties, their successors, or others appear so long as they share the same 'quality' as parties." *Welch v. Crown Zellerbach Corp.*, 359 So.2d 154, 156 (La. 1978). *See also Black v. Exxon Mobil Corp.*, 14-524 (La. App. 5 Cir. 11/25/14), 165 So.3d 1013, 1016 ("The jurisprudence does not demand that the parties in the two lawsuits be physically identical.").

In *Forum for Equality*, *supra*, the Louisiana Supreme Court found no error in the trial court's ruling granting an exception of res judicata where the interests of the parties who were named in a second lawsuit, but not named as parties in the first lawsuit, were so closely aligned with the parties in the first lawsuit that they were adequately represented in the first suit. 893 So.2d at 745. Similarly, we find that Grace's interest in decedent's succession was adequately represented by Carla, as their interests were closely aligned and shared the same "quality as parties," where Carla was named as trustee and executrix, and the testamentary trust named

Grace as the exclusive beneficiary. Moreover, Kevin, named as a successor-in-interest trustee to Carla, is bound by the consent judgment to which Carla agreed. *Forum for Equality*, 893 So.2d at 745.

Here, Carla's participation in and agreement to the 2020 consent judgment also bound Grace and Kevin. A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. La. C.C. art. 3071. A valid compromise can form the basis of a plea of res judicata because a compromise has the legal efficacy of a judgment. *Brown v. Drillers*, 93-1019 (La. 1/14/94), 630 So.2d 741, 747; *Hamsa v. Hamsa*, 05-219 (La. App. 5 Cir. 12/27/05), 919 So.2d 776, 778.

Third, we do not find that this case presents the type of "exceptional circumstances" that would justify re-opening an issue that had become final, through the parties' consent. "The 'exceptional circumstances' exception generally applies to complex procedural situations in which litigants are deprived of the opportunity to present their claims due to unanticipated quirks in the system, factual situations that could not be anticipated by the parties, or decisions that are totally beyond the control of the parties." *Oleszkowicz v. Exxon Mobil Oil Corp.*, 14-256 (La. 12/9/14), 156 So.3d 645, 648. No such exceptional circumstances exist here.

Finding no merit to appellants' argument that the trial court erred in sustaining the exception of res judicata, we affirm that portion of the trial court's judgment.

*Exception of Prescription and Allegations of Nullity*

Appellants further argue that the trial court erred in denying their exception of prescription filed in response to Marcus's Petition for Absolute Nullity of the

2003 quitclaim deed that transferred any interest that decedent held in the property to his wife, Fabaria.

Ordinarily, the exceptor bears the burden of proof on the peremptory exception of prescription. *Woods v. Cousins*, 12-100 (La. App. 5 Cir. 10/16/12), 102 So.3d 977, 979.[3] If prescription is evident on the face of the pleadings, however, the burden shifts to the plaintiff to show that the action has not prescribed. *Id*. (citing *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So.2d 502). When neither party introduces evidence on the exception of prescription, the exception must be decided on the facts alleged, which are accepted as true. *Woods*, 102 So.3d at 978-79. But this principle applies only to properly pled material allegations of fact, as opposed to allegations deficient in material detail, conclusory factual allegations, or allegations of law. *Id*. at 979 (citing *Kirby v. Field*, 04-1898 (La. App. 1 Cir 9/23/05), 923 So.2d 131, 135, *writ denied*, 05-2467 (La. 3/24/06), 925 So.2d 1230 (finding that the allegations in the petition revealed significant deficiencies in factual particularity, especially as to allegations of facts purportedly constituting fraud). When no evidence is introduced, appellate courts review judgments on an exception of prescription de novo. *In re Singleton*, 19-578 (La. App. 5 Cir. 9/2/20), 303 So.3d 362.

Marcus contends that the quitclaim deed is "absolutely null" because one of the witnesses to the transfer "does not remember" signing it, and it was "highly unlikely" that she signed it because she was attending school in Tennessee at the time. Marcus also alleges that his father was illiterate, that he was not of sound mind, and that his wife coerced him to transfer his interest in the property to her in 2003.

---

[3] In *Woods*, this Court found that the claim was prescribed on the face of the petition, and the non-mover failed to offer evidence proving that prescription was suspended or interrupted. Accordingly, the trial court properly sustained the exception of prescription. *Id*. at 979.

A contract is absolutely null when it violates a rule of public order, as when the object of the contract is illicit or immoral. La. C.C. art. 2030. Actions for absolute nullity never prescribe. La. C.C. art. 2032. A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. La. C.C. art. 2031. Relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative. *Id.* An action to annul a relatively null contract must be brought within five years from the time that the ground for nullity either ceased, as in the case of incapacity or duress, or was discovered, as in the case of error or fraud. La. C.C. art 2032.

All persons have capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting. La. C.C. art. 1918. A contract made by a noninterdicted person deprived of reason at the time of contracting may be attacked after his death, on the ground of incapacity, only when the contract is gratuitous, or it evidences lack of understanding, or was made within thirty days of his death, or when application for interdiction was filed before his death. La. C.C. art. 1926.

On the face of the petition, accepting all well-pleaded facts as true, we must first determine whether the allegations sufficiently state a claim for absolute nullity, which is imprescriptible, or whether those allegations constitute the basis for relative nullity only. Again, an absolute nullity results when the object of the contract is illicit or immoral, or where it violates a rule of public order. La. C.C. art. 2030. The facts as pled in the petition for nullity assert that one of the witnesses cannot remember decedent, cannot remember witnessing decedent's signature to the quitclaim deed, and that she purportedly attended school out of state at the time the quitclaim deed was executed. The contention that these facts

(accepted as true for purposes of evaluating prescription) render the quitclaim deed an absolute nullity is a conclusion of law, not a well-pled fact.

We find that the allegations regarding the execution of the quitclaim deed constitute allegations of relative nullity, not absolute nullity. The Petition for Nullity contains no allegations that the witness's signature was forged or that the witness did not sign the document; it alleges only that the witness *could not have* signed it because she was attending school 650 miles away. Yet there is no affidavit from this witness, no testimony from any other party to indicate that the quitclaim deed lacks authenticity, and no copy of the quitclaim deed at issue. Furthermore, mere allegations that the act is null because of a defect in form—because one of the witnesses allegedly did not witness decedent's signature—is insufficient to invalidate the deed. "An act that fails to be authentic because of the lack of competence or capacity of the notary public, or because of a defect in form, may still be valid as an act under private signature." La. C.C. art. 1834. "A transfer of immovable property must be made by authentic act or by act under private signature." La. C.C. art. 1839. *See also New Era Dev. Corp. v. Robert*, 12-304 (La. App. 5 Cir. 11/13/12), 105 So.3d 889, 891. In short, the factual allegations in the Petition for Nullity fail to support a legal conclusion that the quitclaim deed could be rendered absolutely null.

The additional claims alleged in the Petition for Nullity—that Carle executed the quitclaim deed under coercion, that he lacked capacity, and that he was illiterate, so he did not know what he was signing—constitute potential bases for relative nullity. Claims of fraud or coercion are grounds for relative nullity. *Whitten v. Moorman*, 42,704 (La. App. 2 Cir. 12/5/07), 973 So.2d 159, 162. Accepting these allegations as true for purposes of evaluating the prescription exception, we must determine next whether the claim that the quitclaim deed is a

relative nullity has prescribed under the five-year prescription period found in La. C.C. art 2032.

Executed in 2003, the quitclaim deed allegedly transferred any interest in the immovable property that decedent may have held to his wife, in exchange "for $10.00 and other valuable consideration." Marcus contends that because he did not discover that the quitclaim deed transferred his father's interest in the immovable property to Fabaria until his stepmother's death in 2018, the discovery rule under the doctrine of *contra non valentem* interrupted or suspended prescription. We disagree.

In *Whitten*, *supra*, the decedent's grandchildren filed an action in 2006 against their father's siblings seeking to nullify a 1972 cash deed and 1985 quitclaim on the basis that the siblings committed fraud and engaged in misrepresentation to coerce their father to sign over his ownership rights. The siblings filed an exception of prescription, which the trial court granted. The Second Circuit affirmed, determining that *contra non valentem* did not interrupt prescription and noting that the plaintiffs offered no evidence—only argument—that their father's signature was coerced or obtained by fraud, and stating that "the jurisprudence applies the prescriptive period to bar nullity actions based on precisely these kinds of claims." 973 So.2d at 163. We find the allegations in the present case similar to the facts in *Whitten* and therefore decline to apply *contra non valentem* to interrupt prescription in this matter.[4]

In sum, the Petition for Nullity fails to allege sufficient facts to constitute a well-pled claim for absolute nullity. The allegations contained therein state facts that could support a claim that the quitclaim deed is a relative nullity only.

---

[4] We also note that a contract made by a noninterdicted person deprived of reason at the time of contracting may be attacked after his death, on the ground of incapacity, only when the contract is gratuitous, or it evidences lack of understanding, or was made within thirty days of his death, or when application for interdiction was filed before his death. La. C.C. art. 1926. None of those grounds may be found in this case.

However, these allegations should have been asserted within five years of the execution of the deed. If an heir were permitted to attack a decades-old quitclaim deed based on unsubstantiated allegations, property claims would never cease and title could rarely be quieted.

*Conclusion*

The trial court's judgment sustaining the exception of res judicata is affirmed. The judgment denying the exception of prescription is reversed. The exception of prescription is granted, and the Petition for Absolute Nullity is dismissed.

**AFFIRMED IN PART,**
**REVERSED IN PART,**
**EXCEPTION OF PRESCRIPTION GRANTED,**
**PETITION FOR ABSOLUTE NULLITY DISMISSED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **FEBRUARY 1, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-192

**E-NOTIFIED**
29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE M. LAUREN LEMMON (DISTRICT JUDGE)
ASHLEY U. SCHMIDT (APPELLANT)          KAMERON P. WHITMEYER (APPELLANT)          STEVEN M. MAUTERER (APPELLEE)

**MAILED**
MICHAEL S. ZERLIN (APPELLANT)          BRAD P. SCOTT (APPELLANT)
ATTORNEY AT LAW                        KAYLA MARTYNENKO (APPELLANT)
123 EAST SEVENTH STREET                ATTORNEYS AT LAW
THIBODAUX, LA 70301                    909 POYDRAS STREET
                                       SUITE 2025
                                       NEW ORLEANS, LA 70112